J-S18015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L., NATURAL FATHER | : | |
| | : | No. 1585 WDA 2017 |

Appeal from the Decree October 10, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CP-02-AP-0000043-2017

| | | |
|---|---|---|
| IN RE: B.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L., NATURAL FATHER | : | |
| | : | No. 1587 WDA 2017 |

Appeal from the Decree October 10, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CP-02-AP-0000042-2017

| | | |
|---|---|---|
| IN RE: K.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L., NATURAL FATHER | : | |
| | : | No. 1588 WDA 2017 |

Appeal from the Decree October 10, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CP-02-AP-0000041-2017

BEFORE: STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 16, 2018**

C.L. ("Father") appeals from the decrees entered October 10, 2017, in the Court of Common Pleas of Allegheny County, which terminated involuntarily his parental rights to his minor daughters, K.L., born in March 2010; B.L., born in February 2012; and S.L., born in March 2014 (collectively, "the Children").[1]  After careful review, we affirm.

The Allegheny County Office of Children, Youth and Families ("CYF") first became involved with the Children on November 2, 2015.  CYF received a referral, indicating that Mother had a known drug problem, and that she moved from Indiana to Pennsylvania to escape her abusive boyfriend, Father. Mother lived with a cousin in Pennsylvania until the cousin forced her to leave in March 2016.  Mother and the Children then moved to a shelter.  Soon thereafter, Mother began to exhibit significant mental health issues, and sought treatment at a hospital.  CYF obtained emergency custody of the Children on March 18, 2016, and the juvenile court adjudicated the Children dependent on April 13, 2016.  Throughout the time of the Children's dependency, Father remained in Indiana.

For the next year, Father called the Children approximately twice per week via either telephone or FaceTime.  Father maintained only sporadic in-person contact with the Children.  Father had one supervised visit in April

---

[1] The decrees also terminated involuntarily the parental rights of the Children's mother, C.S. ("Mother").  Mother appealed the termination at Superior Court Docket Nos. 140 WDA 2018, 141 WDA 2018, and 142 WDA 2018.  Her appeal is not before this panel.

2016 and one unsupervised visit in May 2016. Father then had weeklong unsupervised visits in both June 2016 and July 2016. However, Father did not visit with the Children again until March 2017.

On March 20, 2017, CYF filed petitions to terminate Father's parental rights to the Children involuntarily. The orphans' court conducted a termination hearing on October 10, 2017. Following the hearing, the court entered decrees terminating Father's parental rights. Father timely filed notices of appeal on October 24, 2017, along with concise statements of errors complained of on appeal.

Father now raises the following issue for our review. "Whether the [orphans' c]ourt abused its discretion and/or err[ed] as a matter of law by determining that termination of Father's parental rights would meet the needs and welfare of the [C]hildren under Section 2511(b), in spite of testimony from an evaluator showing a strong bond between [F]ather and daughters[?]" Father's Brief at 7.

We review Father's issue mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

In his brief on appeal, Father makes no effort to argue that the orphans' court abused its discretion by terminating his parental rights pursuant to Section 2511(a). Father also failed to include Section 2511(a) in his concise statements and statement of questions involved. Therefore, Father waived any challenge to Section 2511(a), and we focus our attention on Section 2511(b). **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding that the appellant waived Section 2511(a) by failing to develop it in her brief, and that she waived Section 2511(b) by failing to include it in her concise statements and statement of questions involved). The requisite analysis is as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have

- 6 -

> with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Father argues that the orphans' court abused its discretion by concluding that CYF presented clear and convincing evidence pursuant to Section 2511(b). Father's Brief at 10. Father emphasizes the testimony of psychologist, Neil Rosenblum, Ph.D., who conducted an evaluation of the Children and their parents, and concluded that K.L. and B.L. continue to share a strong bond with Father. *Id.* at 12-13. Father further emphasizes Dr. Rosenblum's testimony that K.L. and B.L. would suffer trauma if they never see Father again. *Id.* at 13.

In its opinion, the orphans' court found that the Children share a bond with their foster parents, and refer to them as "mom and dad." Orphans' Court Opinion, 1/2/18, at 5 (unnumbered pages). The court found that the Children also share a bond with Father. *Id.* However, the court concluded that the Children's bond with Father is not necessary or beneficial, and that the potential damage that would result from prolonging this bond substantially outweighs whatever harm the Children may experience if Father's parental rights are terminated. *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, Dr. Rosenblum testified that he conducted an evaluation of the Children and their parents on September 8, 2017. N.T., 10/10/2017, at 96. Dr. Rosenblum recalled that the older children, K.L. and B.L., were excited to see their parents and ran to hug them, while the youngest child, S.L., stayed back and was more reserved. *Id.* K.L. and B.L interacted well with their parents, while S.L. "seemed to be lost at times and did not receive nearly the same degree of attention from birth parents as her older two sisters did." *Id.* at 96-97.

Based on this evaluation, Dr. Rosenblum concluded that K.L. and B.L. continue to share a strong bond and close relationship with their parents. *Id.* at 126-27. K.L. retains the strongest attachment to her parents, with B.L. "somewhere in the middle," and S.L. not displaying much of an attachment at all. *Id.* at 108. Dr. Rosenblum believed that K.L. and B.L. would suffer severe emotional trauma if they never saw their parents again. *Id.* at 111.

Nonetheless, Dr. Rosenblum testified that the Children's primary attachment is to their foster parents, with whom they have lived since March 2016. *Id.* at 88, 112. Dr. Rosenblum explained that he conducted an evaluation of the Children and their foster parents on September 6, 2017. *Id.* at 88. During the evaluation, the Children displayed a "very strong, loving relationship" with their foster parents. *Id.* at 89. Dr. Rosenblum continued,

"There's no question that they are very securely attached to them. They refer to them as mommy and daddy." *Id.*

Dr. Rosenblum further testified that both K.L. and B.L. indicate that they want to stay with their foster parents. *Id.* at 112. K.L. explained that her foster parents "help her feel safe, and she loves her foster parents more because her birth parents treated her badly." *Id.* at 138. She stated that she does not feel bad when her parents fail to call her, because "she can play games instead . . . ." *Id.* B.L. recalled that living with her parents "was dangerous . . . that her dad kept throwing things at her." *Id.* at 94. She stated that she "wouldn't miss her old mom and dad as she wants to be in a safe home . . . ." *Id.* at 138.

Ultimately, Dr. Rosenblum recommended an open adoption, so that the Children can maintain ongoing contact with their parents.[2] *Id.* at 113, 134, 143. When asked whether he would recommend an adoption even if there were no assurance of ongoing contact, Dr. Rosenblum confirmed that he would. *Id.* at 133. However, he cautioned once again that ending all contact would cause the Children "further trauma." *Id.* at 133-34.

Thus, the record confirms that terminating Father's parental rights would best serve the Children's needs and welfare. S.L. does not share a bond

---

[2] Dr. Rosenblum expressed concern that the Children's foster parents did not appear to be interested in an open adoption. N.T., 10/10/17, at 115. CYF caseworker, Erin Frawley, testified that she met with the foster parents after Dr. Rosenblum's evaluation, and that they indicated that they would "consider some type of post[-]adoption agreement." *Id.* at 26, 46.

with Father. While K.L. and B.L. do share a bond with Father, their feelings toward him are mixed. K.L. and B.L. speak negatively about Father, and indicate that they would like their foster parents to adopt them. It is not clear from the record whether the foster parents will enter into an agreement allowing Father to maintain contact with the Children. However, even in the absence of such an agreement, the benefits of permanency through adoption will outweigh whatever emotional harm the Children may experience.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights involuntarily. Therefore, we affirm the court's October 10, 2017 decrees.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/2018